592 A.2d 740

**In the Interest of Donovan McELRATH, a Minor, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania.**

Superior Court of Pennsylvania.

Argued April 2, 1991.

Filed June 13, 1991.

---

Lenora M. Smith, Harrisburg, for appellant.

Kathy G. Wingert, Deputy Dist. Atty., Harrisburg, for Com., appellee.

Before JOHNSON, HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from an order placing appellant, Donovan McElrath, a juvenile, on strict probation following an adjudication of delinquency. For the following reasons, we affirm.

The events underlying the instant appeal began on March 21, 1990 when appellant, dressed in a black jacket and light colored pants, accosted Mr. Robert "Catherine" McIntyre. The appellant produced a black gun and ordered the victim, "Give me your purse." The victim contacted the police, providing a full description of the perpetrator and indicating the direction in which he had fled. A person matching the description provided by the victim was observed by a number of people, both citizens and police officers, as he travelled from the scene of the crime to his residence at 1333 Green Street. The arresting officers entered the residence within a short time after the robbery and found appellant changing his clothes. The officers also discovered a black B–B gun on a table in the hallway of the residence.

The police officers, one of whom was in uniform, escorted appellant down to the street where the victim was waiting in a police cruiser. The victim thereupon identified appel-

lant as his assailant and stated that the weapon found by the police was the weapon used against him. This identification took place less than one half hour after the robbery.

Appellant was subsequently arrested and charged with robbery. Prior to the adjudicatory hearing on his case, appellant filed a motion to suppress a pre-arrest show-up as well as the out-of-court identification. This motion was denied. The lower court then conducted an adjudicatory hearing which resulted in a determination that appellant had committed the acts alleged. Thereafter, a disposition hearing was held before the Honorable Sebastian D. Natale, who found appellant delinquent and placed him on strict probation. The instant appeal followed[1] presenting three questions for our review: (1) whether the lower court erred by failing to suppress the pre-arrest and subsequent pre-trial identifications as unduly suggestive; (2) whether the in-court identification should have been suppressed as tainted by the unduly suggestive pre-trial identification; and (3) whether the evidence was sufficient to sustain a finding that appellant was the perpetrator of the acts charged.

In reviewing the denial of a motion to suppress evidence, an appellate court has a duty to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Nelson*, 399 Pa.Super. 618, 621, 582 A.2d 1115, 1117 (1990). In making this determination, an appellate court considers only the evidence of the prosecution's witnesses and so much of the evidence for the defense which remains uncontradicted

---

1. The record indicates that, in accordance with the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.*, appellant filed no post-trial motions. *See Commonwealth v. Clay*, 376 Pa.Super. 425, 546 A.2d 101 (1988) (the Juvenile Act does not provide for post-trial motions for relief and procedures for post-trial review do not apply to juvenile proceedings). *Accord Matter of Smith*, 393 Pa.Super. 39, 573 A.2d 1077 (1990) (*en banc*) (the Juvenile Act does not provide for the filing of post-trial motions; however, post-adjudication motions are the appropriate means by which allegations of ineffectiveness of counsel may be brought to the attention of the trial court and preserved for appellate review).

when fairly read in the context of the record as a whole. *Id., citing Commonwealth v. Lark,* 505 Pa. 126, 477 A.2d 857 (1984). When the evidence viewed in this manner supports the factual finding of the suppression court, we will reverse only if there is an error in the legal conclusion drawn from those factual findings. *Commonwealth v. Daniels,* 404 Pa.Super. 272, ——, 590 A.2d 778, 779 (1991).

 Appellant's first and second arguments are intertwined and will be considered together. Appellant contends that it was error for the lower court to refuse to suppress the pre-trial identification procedures because they were so unduly suggestive as to render them unreliable. The corollary of this claim is that the in-court identification should have been suppressed as irretrievably tainted by the suggestive initial identification procedures. In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. *Commonwealth v. Sample,* 321 Pa.Super. 457, 461, 468 A.2d 799, 801 (1983), *citing Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Commonwealth v. Sutton,* 496 Pa. 91, 436 A.2d 167 (1981). Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. *Id.* 321 Pa.Super. at 461–62, 468 A.2d at 801. As the *Sample* court explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Id.,* 321 Pa.Superior Ct. at 462, 468 A.2d at 801. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Id.*

 Appellant's convoluted argument appears to find the circumstances of this case to have been unduly suggestive because it involved a one-on-one confrontation between

the victim and a single suspect, the appellant, at which a uniformed police officer was present. Appellant also focuses on the fact that the victim noticed the appellant's gun in the hand of a police officer before he looked at appellant's face and made the identification. However, this argument attempts to create suggestiveness where none was present. The facts outlined above indicate that the victim's prompt complaint enabled the police to use the description provided so as to track down and locate appellant almost immediately after the perpetration of the robbery. Less than one half hour after the crime, the police were able to present appellant for a viewing by the victim. This is proper procedure. Absent some special element of unfairness, prompt, one-on-one identification is not *per se* violative of the accused's constitutional rights, even where the accused has been returned to the scene of the crime in a police cruiser. *Commonwealth v. Clemmons*, 505 Pa. 356, 522–23, 479 A.2d 955, 960 (1984). *See also Commonwealth v. Capers*, 340 Pa.Super. 136, 141, 489 A.2d 879, 882 (1985) (prompt on-the-scene identifications are generally deemed reliable and are not subject to suppression in the absence of special elements of unfairness). The fact that the victim in the instant case noticed appellant's gun before focussing on appellant's face at the prompt pre-arrest identification does not render it either unreliable or unduly suggestive. The victim's view of an assailant's weapon, whether before or after an identification is made, does not qualify as a special element of unfairness. *Commonwealth v. Perdie*, 249 Pa.Super. 406, 410 n. 5, 378 A.2d 359, 361 n. 5 (1977).

■ Assuming, *arguendo*, that we had determined the identification procedure employed in the instant case to have been unduly suggestive, appellant's argument ignores the fact that reliability is the linchpin in assessing the admissibility of a challenged identification. *Commonwealth v. Sample*, 321 Pa.Super. at 462, 468 A.2d at 801. Here, the victim testified that appellant initially confronted him from a distance of about eight to ten feet, and that he viewed his assailant at close range for approximately five

seconds while he was surrendering his purse. N.T. 4/10/90 at 63–70. In responding to a question regarding his opportunity to view the perpetrator's visage, the victim flatly stated, "I will never forget his face." *Id.* at 72.

A fair reading of the record shows that although the victim only viewed the perpetrator for a short time, appellant closely matched the description the victim provided to the police and the victim strongly focussed on the attacker's facial appearance. Further, the victim unequivocally identified appellant as the attacker when confronting him outside appellant's residence. *See Commonwealth v. Capers, supra* (although the victim was able to see her attacker for only a brief period, her on-the-scene and in-court identifications were admissible where she had given the police an accurate description, testified that when she viewed the attacker shortly after the crime she recognized the perpetrator's jacket and facial features, and her identification was positive). Under the circumstances presented by the instant case, even were we able to conclude that the identification procedure had been suggestive, we still could not find the victim's pre-trial in-court identification to be unreliable.

■ Appellant also objects to the testimony provided by Christina Rohrbach, who reported to the police that on the night in question she noticed a black male running down the street on which she lived. N.T. 4/10/90 at 40. This male corresponded to the description of the perpetrator provided by the victim. *Id.* After appellant was arrested, and while he was sitting in a police cruiser, Ms. Rohrbach identified him as the person she saw running in her neighborhood. *Id.* at 42.

The witness testified that the interior of the vehicle was dark and she consequently had difficulty discerning the appellant's facial features while he was in the cruiser. *Id.* However, she stated that the jacket worn by the person in the cruiser exactly matched the jacket worn by the running man. *Id.* Further, the description the witness provided of the runner and his clothing closely matched the victim's

description. *Id.* at 41–47. At the suppression hearing Ms. Rohrbach unhesitatingly identified appellant[2] as the person she saw in her neighborhood on the night of the robbery. *Id.* at 41–43. In light of the standard which we have already set forth, we cannot find this testimony to be the result of suggestive police procedure nor can we find it inherently unreliable. *See also Commonwealth v. Dickerson,* 226 Pa.Super. 425, 313 A.2d 337 (1974) (identification of defendant by crime victim was not unduly suggestive although the defendant was handcuffed and sitting in police wagon at the time).

We note that in connection with his first two claims, appellant has also discussed at length the testimony of Police Officers Horst, Taylor and Rivera regarding the methodology they employed to locate appellant and present him to both Ms. Rohrbach and the victim for identification. This extensive narrative does not appear to advance a

2. The argument in appellant's brief mischaracterizes the nature of the in-court identification that occurred at the suppression hearing. The witness did not hesitate to pick out appellant from among the persons present in the courtroom. However, the lower court judge felt it necessary to clarify the identification in light of defense counsel's response:

Q. (By the Commonwealth): Is the person you saw running in the courtroom today?
A. Yes, he is.
Q. Where is he sitting:
A. He is right there. (Indicating.)
Q. (By Defense Counsel) Where? Let the record reflect that she has pointed to the gentleman sitting in—
The Court: Who are you pointing to?
A. In the gallery there.
The Court: Who are you pointing to?
A. I said over there. (Indicating.)
The Court: What is the person wearing?
A. He was wearing a black jacket. Right now? A white shirt. I said "Over there." (Indicating.)
The Court: Well, will you go down and touch the person you are identifying right now?

N.T. 4/10/90 at 40–41. The witness promptly walked to appellant and indicated that he was the person to whom she had been referring. *Id.* A fair reading of this testimony leads us to conclude that, although the witness' gesture may have been ambiguous regarding the exact person to whom she pointed, the witness was not confused as to the identity of the person she saw running on the night of the robbery.

theory that the police officers' testimony should be suppressed as somehow infected by the suggestiveness of the circumstances. Rather, appellant seems to argue that the behavior of the police in pursuing and apprehending appellant serves to bolster his claim that the identification procedure was suggestive. The proper question, however, when analyzing the suggestiveness of an identification does not concern the methods employed to apprehend a suspect. The correct focus centers on whether the end result of the quest has presented a suspect to a witness under suggestive circumstances, and if so, whether the resulting identification is reliable enough to overcome that suggestiveness. *See Commonwealth v. Sample, supra.* We have already concluded that the identifications were not suggestive and that they were reliable. Finding no error in the legal conclusions drawn by the lower court, we can grant appellant no relief on his suppression claim. As the pre-trial identification testimony was properly admitted, we affirm the lower court's decision to admit the victim's in-court identification because there are no grounds upon which we could find it to be tainted.

The final question presented by appellant is whether there was sufficient evidence upon which the lower court could base its determination that he was guilty, beyond a reasonable doubt, of the crime charged. The thrust of appellant's objection is that the description of the assailant was general enough to fit "a great many persons" and that the only truly relevant testimony presented was that of the victim. When faced with a sufficiency claim, this court must determine whether all the elements of the crime have been proven beyond a reasonable doubt viewing the record in the light most favorable to the prosecution as the verdict winner. *Commonwealth v. Glover,* 399 Pa.Super. 610, 615, 582 A.2d 1111, 1114 (1990).

A person is guilty of robbery if, in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury. 18 Pa.C.S.A. § 3701(a)(1)(ii). Robbery may also be sustained

where, in the course of committing a theft, a person takes or removes property from another person by force, however slight. *Id.* § 3701(a)(1)(v); *Commonwealth v. Williams*, 379 Pa.Super. 538, 542 n. 1, 550 A.2d 579, 580 n. 1 (1988), *allocatur denied*, 522 Pa. 612, 563 A.2d 498 (1989). *Accord Commonwealth v. Nelson, supra.* The force may be actual or constructive. *Commonwealth v. Williams*, 379 Pa.Super. at 544, 550 A.2d at 581. Constructive force consists of the use of threatening words or gestures sufficient to separate the victim from his property. *Commonwealth v. Brown*, 506 Pa. 169, 176, 484 A.2d 738, 741 (1984).

Even discounting all the other testimony presented, the record, as previously discussed, shows that within a half hour of the crime, the victim immediately and positively identified appellant as the person who took his purse at gunpoint. The record further discloses that the victim was positive as to the facial appearance of the robber and unhesitatingly indicated, both in- and out-of-court, that appellant was the assailant who threatened him with a gun and took his property. This testimony, if believed, was enough to sustain a conviction for robbery. *See Commonwealth v. Flynn*, 314 Pa.Super. 162, 460 A.2d 816 (1983) (identification of defendant by victim was sufficient to sustain convictions for rape, robbery and burglary).

The real focus of appellant's argument, however, is to challenge the credibility of the victim's testimony. In particular, appellant objects to the fact that the victim is a tall, white transsexual who takes hormones and is consulting with a psychiatrist regarding gender identity. *See* N.T. 4/10/90 at 69–77. However, this argument goes to the weight to be given the victim's testimony, not to the sufficiency of the evidence adduced at trial. Credibility is for the trier of fact, who is free to believe all, part or none of the evidence presented. *Commonwealth v. Nelson*, 399 Pa.Super. at 623–24, 582 A.2d at 1118, *citing Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102 (1984). Where issues of credibility and weight of the evidence are concerned, it is not the function of an appellate court to

substitute its judgment based on a cold record for that of the trial court. *Commonwealth v. Paquette,* 451 Pa. 250, 257, 301 A.2d 837, 841 (1973). *See also Commonwealth v. Wallace,* 522 Pa. 297, 315, 561 A.2d 719, 728 (1989), *citing Commonwealth v. Nelson, supra* (under ordinary circumstances, an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record"). A new trial is warranted on a challenge to the weight of the evidence only if the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Glover,* 399 Pa.Super. at 615–16, 582 A.2d at 1114. In light of the foregoing discussion it suffices to say that we are not shocked. We therefore conclude that appellant is entitled to no relief based on his third argument.

Order affirmed.