611 A.2d 1318

**COMMONWEALTH of Pennsylvania**

v.

**Jason BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted May 13, 1992.

Filed Aug. 17, 1992.

John W. Packel, Bradley S. Bridge, Asst. Public Defenders, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, OLSZEWSKI and KELLY, JJ.

WIEAND, Judge:

Jason Brown was tried by a jury and was found guilty of aggravated assault and possessing an instrument of crime.[1] His post-trial motions were denied, and he was sentenced to serve concurrent terms of imprisonment for not less than five (5) years nor more than ten (10) years for aggravated assault and for not less than two and one-half (2 1/2) years nor more than five (5) years for possessing an instrument of crime. On direct appeal from the judgment of sentence, Brown contends that he was arrested without probable cause and that the evidence identifying him as an assailant was obtained by unduly suggestive conduct on the part of the police. We find no merit in these contentions and affirm the judgment of sentence.

While walking through the underground concourse near Eighth and Market Streets, in Philadelphia, during the early morning hours of October 21, 1989, Robert B. Perdick was

---

1. Brown was found not guilty of robbery.

accosted by an Afro–American male carrying a sawed-off shotgun. As a group of the assailant's friends looked on, the assailant struck Perdick on the left temple with the butt of the shotgun. One of the bystanders yelled that he thought Perdick was a cop; whereupon, the assailant backed off, and Perdick attempted to get away. The assailant and two companions gave chase, and when they caught up with Perdick, he was forced to his knees at knifepoint. The men thereupon rifled Perdick's pockets and gym bag and took his wallet, watch, paycheck and cash in the amount of sixteen ($16.00) dollars. His assailant then stabbed Perdick in the side before leaving. Perdick was able to dial 911 and summon help; and when police arrived, he was taken to Jefferson Hospital.

At or about 3:30 a.m. on the same morning, police observed three males hiding behind a pillar in the 300 block of Florist Street, where the men were watching people as they left a private club and walked to their cars. One of the men, later identified as Michael Stratton, had a long object in his hand, which the police thought might be a "slap hammer" used in the stealing of cars. When, after several minutes, the three became aware that they were being observed, they froze. The police identified themselves and asked the men what they were doing. Stratton was told to drop whatever he had in his hand. The men did not answer but merely stared at the police, who now began to fear that Stratton was carrying a weapon. One of the police, therefore, drew his gun, threatened Stratton and again told Stratton to drop it. When he finally did so, the men were patted down. The object being held by Stratton was found to be a sawed-off shotgun, and a .22 revolver was found near the feet of another of the men, Raymond Lewis.

When backup assistance arrived, the police learned of the Perdick robbery. The men and the sawed-off shotgun were taken to Jefferson Hospital, where Perdick was now a patient. He was shown the sawed-off shotgun and identified it as the one used in the assault upon him. Although initially uncertain about the identity of the three men,

Perdick later identified Jason Brown, the third man, as the one who had assaulted him in the concourse.

█ Brown moved pre-trial to suppress the fruits of the arrest, but his motion was denied and the evidence was used by the prosecution at trial. The suppression court's ruling was not raised by Brown in post-trial motions and was not again argued before the trial court.[2] Therefore, the issue has been waived. Only those claims which are raised in post-trial motions are preserved for appellate review. *Commonwealth v. Manigault*, 501 Pa. 506, 509, 462 A.2d 239, 241 (1983); *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979); Pa.R.Crim.P. 1123(a).

█ Moreover and in any event, appellant's contention is lacking in merit. An individual may be stopped and briefly detained, provided the investigating officer can point to specific and articulable facts which, in conjunction with the natural inferences deriving therefrom, reasonably warrant the intrusion. *Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986); *Commonwealth v. Prengle*, 293 Pa.Super. 64, 437 A.2d 992 (1981). An investigative detention may properly ripen into an arrest based on probable cause when additional information confirming the earlier suspicion is uncovered. *Commonwealth v. White, supra* 358 Pa.Super. at 128, 516 A.2d at 1215; See also *Commonwealth v. Palm*, 315 Pa.Super. 377, 462 A.2d 243 (1983). In the instant case, the police officers could reasonably make an investigatory stop when, at 3:30 a.m., they observed three men lurking behind a pillar as they watched people move to their cars, while one of them held what appeared to be either a weapon or a device used to steal cars. The object in question was in fact a sawed-off shotgun, and the police also found a handgun on the ground where the three men had been standing. When these discoveries were made, the police had probable cause to arrest. Merely because the police could not conclusively state that the handgun was appellant's and not one of his companion's did

---

2. Brown filed supplemental post-trial motions, but these also did not raise the legality of the arrest.

not invalidate that arrest. See: *Commonwealth v. San-gricco*, 475 Pa. 179, 379 A.2d 1342 (1977); *Commonwealth v. Chase*, 394 Pa.Super. 168, 575 A.2d 574 (1990); *Commonwealth v. Bunch*, 329 Pa.Super. 101, 477 A.2d 1372 (1984).

Appellant's contention that the victim's hospital and in-court identifications were unreliable and should have been suppressed is premised upon his claim that the hospital identification was unduly suggestive. More specifically, he complains that at the hospital (1) the victim was shown the shotgun before he saw appellant; (2) appellant and the other two men were in handcuffs; and (3) the victim was told that a less than positive identification would not suffice and that in court he would have to say "it was definitely them or it was definitely not them." [3]

In *McElrath v. Commonwealth*, 405 Pa.Super. 431, 592 A.2d 740 (1991), the Superior Court identified the necessary area of inquiry in resolving identification issues as follows:

In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the

3. The testimony at the suppression hearing was as follows:
Q. What occurred next?
A. Next the three defendants were led to the complainant, at which time he indicated to me that it was possible that these were the people that robbed him. At that time he appeared to be frightened—
Q. When you say—
A. —apprehensive.
Q. When you say it was possible, are you indicating you did not consider that positive identification at that point?
A. That's correct.
Q. Did he say that to you in the presence of Officer Beren?
MR. KUSHTO: Objection.
THE COURT: If you recall.
THE WITNESS: I don't recall, sir.
BY MR. BANK:
Q. Now, after that what occurred next?
A. The prisoners were led away from the immediate area of the complainant and I told the complainant that that would not be a good enough identification on these defendants. I said according to the law or whenever we get to court or whatever, you're going to have to say it was definitely them or it was definitely not them. At which time he indicated that this defendant was the person who had the shotgun and did stab him.

circumstances, the identification was reliable. *Commonwealth v. Sample,* 321 Pa.Super. 457, 461, 468 A.2d 799, 801 (1983), *citing Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Commonwealth v. Sutton,* 496 Pa. 91, 436 A.2d 167 (1981). Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. *Id.* 321 Pa.Super. at 461–62, 468 A.2d at 801. As the *Sample* court explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Id.,* 321 Pa.Superior Ct. at 462, 468 A.2d at 801. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. *Id.*

*Id.,* 405 Pa.Superior Ct. at 437, 592 A.2d at 742–743. Absent some special element of unfairness, a prompt one-on-one identification is not so suggestive as to give rise to an irreparable likelihood of misidentification. *Commonwealth v. Turner,* 454 Pa. 520, 523, 314 A.2d 496, 498 (1974); *Commonwealth v. Thomas,* 372 Pa.Super. 349, 360, 539 A.2d 829, 835 (1988).

During the assault in the instant case, the victim had an opportunity to observe his assailant for more than four minutes in a well lighted area. He explained that his hesitation in making a positive identification of appellant at the hospital was the result of fear and intimidation. This one-on-one confrontation occurred less than two hours after the assault. The identification, despite what appeared to be an initial uncertainty, was positive. The suppression court found that it was not a result of police suggestiveness. This is fully supported by the record. The fact that the victim saw the weapon before seeing and identifying appellant did not constitute a special element of unfairness. *McElrath v. Commonwealth, supra* 405 Pa.Super. at 438,

592 A.2d at 743. The fact that appellant and his companions were in handcuffs also does not render the identification improper. *Commonwealth v. Allen*, 287 Pa.Super. 88, 104, 429 A.2d 1113, 1121 (1981); *Commonwealth v. Perdie*, 249 Pa.Super. 406, 410–411, 378 A.2d 359, 361 (1977). Finally, we find neither error nor abuse of discretion in the trial court's finding that the police insistence on a definite identification response was not unduly suggestive. Although the police request was for a definitive response, it did not suggest that it was appellant who had committed the assault on Perdick.

■ Appellant also argues that his five year minimum sentence is "unconstitutionally disproportionate and irrational," because aggravated assault is a lesser included offense of attempted murder[4] and there is no mandatory minimum sentence for that crime. The Superior Court recently considered and rejected the same argument in *Commonwealth v. Spells*, 417 Pa.Super. 233, 612 A.2d 458 (1992). See also: *Commonwealth v. Pendola*, 416 Pa.Super. 568, 611 A.2d 761 (1992).

The judgment of sentence, therefore, is affirmed.

**4.** Appellant was never charged with the crime of attempted murder.