J-S41038-23

2023 PA Super 279

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                    :           PENNSYLVANIA
                    Appellant          :
                                                    :
                                                    :
                                                    :
            v.                           :
                                                    :
                                                    :
                                                    :
LOGAN MILLER                      :    No. 459 WDA 2023

Appeal from the Suppression Order Entered March 2, 2023
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001617-2022

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED: December 28, 2023**

The Commonwealth/Appellant appeals from the order entered in the Fayette County Court of Common Pleas on March 2, 2023, granting the Defendant's motion to suppress the identification of the Defendant by the victim. After a careful review, we reverse.

The relevant facts and procedural history are as follows: On June 20, 2022, Zachariah Stephens (hereinafter, "victim") was in the parking lot of a Community Center in the City of Connellsville when he was approached by the Defendant, Logan Miller. R.R. 8a. The Defendant engaged the victim in a conversation and asked the victim to buy him alcohol. The victim refused and the Defendant informed him that he had a firearm. R.R. 10a. The victim began to walk away from the Defendant when the Defendant struck the victim. ***Id***.

_____

[*] Former Justice specially assigned to the Superior Court.

The Defendant caught up to the victim and another individual became involved when he approached from another direction. R.R. 11a. The other individual was Riley Miller, the brother of the Defendant. R.R. 12a. The victim was scared that the Defendant would kill him, and heard the other individual, Riley, say he wanted to watch somebody bleed. R.R. 11a-12a. While blocking a hit from the Defendant, the victim was struck with a knife in his elbow by Riley. R.R. 12a. The victim saw the knife in Riley's hand, and as the attack continued, Riley stabbed the victim in the right sight of his ribs and again in his stomach. R.R. 13a-14. The victim was able to run away and screamed for help, and the attackers did not follow. R.R. 14a.

When the victim arrived home and discovered the severity of his wounds, he called 911 and headed back towards the Community Center while an ambulance was sent. R.R. 16a. He was life-flighted to the Presbyterian Hospital in Pittsburgh where he remained for six days. R.R. 16a-17a. His intestines had to be removed during surgery and his ribs needed to be broken so a nine-inch tube could be inserted in his lung behind the stab wound. R.R. 17a.

On June 21, 2022, while the victim was in the hospital, Detective Thomas Patton of the Connellsville City Police Department came to interview him. N.T. at 23. During the meeting, Detective Patton showed a single photo of Logan Miller to the victim, and the victim identified the man in the photo to be the first assailant who approached him in the parking lot before the attack. N.T., 2/27/23, at 14. The victim was not familiar with the attackers before

that night and did not learn the Defendant's name until he identified the man in the photo as his attacker.

On September 1, 2022, the preliminary hearing was held in which the victim identified the Defendant. The Defendant filed an omnibus pre-trial motion to suppress the identification made of the Defendant. At the suppression hearing, the victim gave a description of the Defendant as having blonde hair and having worn sweatpants, a shirt, and shoes. N.T. at 7. The victim testified that he was able to clearly view the Defendant's face during the initial conversation the night of the attack. *Id*. The victim again identified the Defendant as the first person to have attacked him that night. N.T. at 8.

The Commonwealth played video footage of the incident in the parking lot between the victim and the Defendant and shows them conversing face-to-face. N.T. at 10. The victim identified the Defendant as the man in the video. N.T. at 11-12. The Commonwealth also played the recording of the victim's 911 call where the victim described the Defendant has a white male kid with long, dirty blonde hair. N.T. at 12. The court granted the motion to suppress the identification based on the suggestive photo shown by the detective. The Commonwealth filed a motion for reconsideration to allow the Commonwealth to present the victim's in-court identification, which the court denied. This appeal followed.

The Commonwealth/Appellant raises one question on appeal: "Whether the Trial Court erred in precluding the Commonwealth from offering the

victim's in-court identification of the defendant at the time of trial?" Appellant's Br. at 4.

Our standard of review of a lower court's order granting a Defendant/Appellee's motion to suppress evidence is well established:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts. **Commonwealth v. Miller**, 2012 PA Super 251, 56 A.3d 1276, 1278-79 (Pa. Super. 2012) (citations omitted). "Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain de novo review over the suppression court's legal conclusions." **Commonwealth v. Brown**, 606 Pa. 198, 996 A.2d 473, 476 (2010) (citation omitted).

**Commonwealth v. Korn**, 139 A.3d 249, 252-53 (Pa. Super. 2016).

The Defendant's position is that the in-court identification was tainted by the officer having shown only one photo to the victim. Although in this case the police showed only one photo of the Defendant to the victim, our inquiry must focus upon whether the identification was nevertheless reliable. **Commonwealth v. Davis**, 17 A.3d 390, 394 (Pa. Super. 2011). To establish reliability in the wake of a suggestive identification, the Commonwealth must prove, through clear and convincing evidence, the existence of an independent basis for the identification. **Commonwealth v. Fisher**, 769 A.2d 1116, 1127 (2001). When an out-of-court identification is alleged to be tainted, an in-

court identification may still stand if, considering the totality of the circumstances, the identification "had an origin sufficiently distinguishable to be purged of the primary taint." ***Commonwealth v. Abdul—Salaam***, 678 A.2d 342, 349 (Pa. 1996); ***see also Commonwealth v. James***, 486 A.2d 376 (Pa. 1985). In determining whether an independent basis for identification exists, we must consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. ***James***, 486 A.2d at 376 (Pa. 1985). "Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." ***McElrath v. Commonwealth***, 592 A.2d 740, 742 (Pa. Super. 1991).

The Commonwealth argues that the victim was able to view the Defendant's face before, during, and after the attack. Appellant's Br. at 10. The victim and Defendant engaged in conversation before the attack and were face-to-face for nearly ten minutes, as opposed to a crime where the victim only has a brief opportunity to view the criminal. ***Id***. Since the Defendant threatened the victim, it would have heightened his awareness, and his defensive blocking of the attack would indicate the victim was paying attention. ***Id***. The victim's identification of the Defendant from the 911 call was an accurate description. ***Id***. Further, the victim exhibited a high degree

of certainty as to who his attackers were, was able to describe and identify the Defendant, and never wavered on his identity. Appellant's Br. at 11. Finally, there was only three months between the attack and the preliminary hearing, and the suppression hearing was eight months later. *Id.* at 11-12. Thus, the victim has an independent basis for his in-court identification of the Defendant. *Id.* at 8.

We agree. Here, we find that the suppression court's findings of fact are not supported by the record. There are four specific findings of fact that the lower court used as factors weighing against a finding of an independent basis for the identification that are not supported by the record.

As to the first factor, the court found that "the encounter with Logan Miller and Riley Miller lasted less than five minutes." Tr. Ct. Op. at 6. This is not what the record reflects. During the preliminary hearing, the victim was being asked the length of time not in the context of the whole encounter and attack, but in context of the time between first meeting Logan Miller and being attacked, even prior to Riley Miller's appearance. R.R. 21a. When the victim testified that he saw Logan first, the transcript reveals this:

> Q: How long did this initial encounter with Logan last? How long were you with him?
> A: It couldn't have been long. It couldn't have been very long, a few minutes.
> Q: If I am correct, this is in the alley way next, or one street over from the Library?
> A: Moreso behind Kathryn Jewelers.
> Q: Okay.
> A: To be more precise.
> Q: Near the two city parking lots?

A: Absolutely between there.
Q: And how long were you there with Logan?
A: Probably five minutes or so. Not much longer than five minutes.
Q: And what –
A: I am thinking it probably wasn't even five minutes.
Q: This is when his struck you?
A: After I stood up and was walking home after he had asked me to get him alcohol. And he had said his piece, that he had a weapon on him.

R.R. 22a. Thus, it was not, as the suppression court states, the victim's testimony that the entire encounter with and attack by Logan Miller and Riley Miller took less than five minutes. The initial conversation the victim had with Logan Miller leading up to the attack was around five minutes. The entire encounter was closer to ten minutes, as evidenced by the video footage played by the Commonwealth.

As to the second factor, the suppression court states that the victim testified he "really wasn't paying attention" and reiterates in its conclusion that the victim was "admittedly intoxicated and not paying attention." Tr. Ct. Op. at 6. However, the victim's testimony that he was not paying attention was not in regard to the Defendant's physical identity. The victim's testimony that he wasn't paying attention was in regard to the words the Defendant was saying as the victim was trying to run away after the attack.

> I continued to try to get away from him. I was another street corner away by the time he pulled out his phone and started saying something. I remember his phone light coming on and I remember thinking this guy is going to kill me if I don't fight back right now. So I stood still for a second. And I heard him saying something loud. I couldn't tell what he was saying. I really wasn't paying attention. I just kind of looked around for anybody else, or check my surroundings. . . .

- 7 -

R.R. 11a.

The suppression court also states that the victim testified that he was "drunk and staggering, that he also could not tell what Defendant Logan Miller was saying." However, the victim's testimony that he was "staggering" was unrelated to intoxication. The victim testified at the preliminary hearing, "I staggered down the road to get away from him, barely conscious from him hitting me." R.R. 10a. He testified at the suppression hearing that he was "staggering after [he] got hit." N.T., 2/27/23, at 16. Thus, we are unpersuaded that the victim paid a lack of attention to the identity of his attacker during their initial, several-minute encounter, and we are unpersuaded that his "staggering" meant he was so intoxicated that his perception was affected, as it occurred after being struck.

Further, the suppression court states that as to prior description, the victim only said that the Defendant was "blond and wearing sweatpants, a shirt, and shoes – with no further description of clothing." Tr. Ct. Op. at 6. However, the 911 call reveals that the victim's description was this:

> OPERATOR: Do you know who these people were?
> MALE VOICE: No, a kid with long hair and another kid.
> OPERATOR: Was it a white male, black male?
> MALE VOICE: Two white males I think. The one white male had long dirty, blonde hair.

911 Call, 6/20/22, at 3.

Finally, the victim maintains throughout his testimony at both proceedings that he could recognize the Defendant's face, knew what the Defendant looked like, saw his face before and during the attack, and that

they were face-to-face and physically touched. The suppression court states,
"Stephens was asked whether he would have been able to identify Logan Miller
without the photo that was provided by the police, to which he responded,
'that's actually opposite of the truth.'" Tr. Ct. Op. at 4. The suppression court's
framing of the question that was asked of the victim is misleading. The record
reveals the question to have been worded like this:

> Q: So, would it be a fair statement to say that without the photo
> that were provided by the police you wouldn't be able to identify
> anybody in this incident?
> A: That's not fair.
> Q: Okay.
> A: That's actually opposite of the truth.

N.T., 2/27/23, at 17. The transcript reveals that the victim's answer was that
it would be unfair, or untruthful, to suggest that the photo shown to the victim
by the detective is the reason for his identification of his assailant.

In ***Commonwealth v. Burton***, 307 A.2d 277 (1973), it was held that
a clear and unobstructed view of the defendant during the commission of the
crime established an independent origin for the later identification of the
defendant at trial in spite of an earlier one-on-one confrontation. In that case,
a girl was raped in her bedroom at night, but the light from the streetlamp
was coming through her room. She was shown four suspects at once and said
none were her attacker. When the attacker was apprehended, the police
presented him alone to the victim, and she identified him as her attacker. The
attacker was taken to the police headquarters where the victim again
identified him, but he was alone behind a one-way mirror. ***Id.*** at 278. Our

Supreme Court held that since the victim was able to view the defendant in her room and because she specifically testified that the attack was how she could identify him, there was an independent origin for the identification. The Court noted, "she specifically testified as follows: 'Q. Is your identification of this defendant in court today -- What is it based upon? A. That's the man that was in my room.'" *Id*.

Here, the Defendant testified,

Q: Now, did you see the first person's face when you're being attacked for the second time?
A: Absolutely.
Q: And was it the same person that you were having a conversation with in the parking lot?
A: The complete same person.
Q: And you were able to view his face again?
A: Nobody other than. There was none other than him the whole time.
Q: So was that person in the courtroom today?
A: Yes.

N.T., 2/27/23, at 9. The record reflects that the victim then identified the Defendant. *Id*. Therefore, we hold that the Commonwealth has met its burden in establishing an independent origin for the victim's in-court identification of the Defendant. We find that the court erred in its conclusions of law as its findings of fact were not supported by the record. Accordingly, we reverse.

Order reversed. Case remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/28/2023