J-S48010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER L. FREEMAN | |
| Appellant | No. 1050 WDA 2015 |

Appeal from the PCRA Order June 11, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012372-2010

BEFORE: BOWES, DUBOW AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J: **FILED SEPTEMBER 19, 2016**

Christopher Freeman appeals from the denial of his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

Based upon the following evidence, Appellant was convicted of robbery, conspiracy to commit robbery, and person not to possess a firearm following a non-jury trial:

> Tyler Walk testified at trial that he and Megan Seastedt were walking on July 14, 2010 near the West End Overlook park in the city of Pittsburgh at approximately 9:00 p.m. As they were walking together, they noticed a male walk past them and sit on a park bench near a walking tunnel in the park. This person was wearing a white t-shirt and a red or dark cap. He had a hairstyle that somewhat resembled "dread locks". They walked toward the tunnel. When they were about a foot away from the male sitting on the bench, the male got up from the bench and pulled a firearm and stuck it against Mr. Walk's abdomen. Mr. Walk did

not get a good look at the gun but he recalled seeing a silver streak. The male told Mr. Walk to "give me what you got."

Ms. Seastedt said "Oh my God" and stepped behind Mr. Walk. Mr. Walk turned over a business card holder and his wallet. Another male came from behind Mr. Walk and patted his pockets. Mr. Walk recalled that one of the males was carrying a backpack. This other male demanded that Mr. Walk turn over money. Mr. Walk turned over a $20 bill that he found in his pocket. The men appeared disappointed that Mr. Walk didn't have more money. Mr. Walk testified that he got a good look at the male holding the gun. They made direct eye contact. He didn't get a good look at the other male. The two males told Mr. Walk and Ms. Seastedt not to call the police and they disappeared into the park.

Mr. Walk and Ms. Seastedt returned to Mr. Walk's vehicle. Once there, they phoned the police. Police responded to the scene and began searching the area. Police detained two men, [Appellant] and Marlin Fields. Mr. Walk and Ms. Seastedt were asked to identify their assailants. At trial, Mr. Walk identified [Appellant] as the male sitting on the bench that held the gun. Mr. Walk also identified Marlin Fields as the other male. By the time they had been apprehended by the police however, [Appellant] was wearing a long sleeved red t-shirt instead of the shirt he was wearing during the robbery.

On cross-examination, Mr. Walk was asked about the physical description of the males that he provided to the police. Mr. Walk testified that he believed he originally told the police that the male holding the gun was about his height, which would be about 5 feet, 9 inches. He did not recall if he originally supplied an estimated weight for that male. He believed he told police that the male was in his "early twenties."

Ms. Seastedt's testimony was virtually identical to Mr. Walk's testimony. She recalled seeing [Appellant] walk past them, sit on the bench and pull the gun on Mr. Walk. She confirmed that Mr. Walk turned over the wallet, business card holder and the $20 to [Appellant].

. . .

Officers conducted a search of the area where the suspects were located. They did not find Mr. Walk's wallet, business card case or his $20. Officers did, however, find a black revolver approximately ten to fifteen yards from where the suspects were detained. The gun was loaded and the hammer was pulled back on the gun. Based on this evidence, [Appellant] was convicted as set forth above.

Trial Court Opinion, 12/21/2011, at 1-4.

We affirmed judgment of sentence on May 15, 2012. *Commonwealth v. Freeman*, 50 A.3d 243 (Pa.Super. 2012) (unpublished memorandum). Appellant did not seek further review, and, on May 9, 2013, filed a *pro se* petition under the PCRA. Appointed counsel filed a *Turner/Finley*[1] no-merit letter and motion to withdraw. The PCRA court granted the motion to withdraw and issued an accompanying notice of intent to dismiss.

In response, Petitioner filed a timely *pro se* motion, asserting that appointed counsel failed to address certain issues in the no-merit letter. The PCRA court did not respond to the motion and dismissed the petition. Petitioner appealed, and, on September 11, 2014, we reversed and remanded for appointment of new PCRA counsel, finding that the *Turner/Finley* letter and the PCRA court's review thereof were defective. *Commonwealth v. Freeman*, 107 A.3d 224 (Pa.Super. 2014).

_____

[1] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

Following remand, current counsel filed an amended PCRA petition raising one issue. The PCRA court conducted a hearing and again denied relief. Appellant perfected a timely appeal, all parties complied with the mandates of Pa.R.A.P. 1925, and the matter is now ready for review. Appellant's sole issue is that

> The PCRA Court erred in denying relief because trial counsel was ineffective for failing to file a motion to suppress the unduly suggestive "show up" identification procedure used immediately following the incident.

Appellant's brief at 6.

These facts are relevant to the issue raised on appeal. Officer Timothy Causey testified that at 10:46 p.m., he and his partner were dispatched for the reported robbery. Officer Causey encountered Mr. Walk, Ms. Seastedt, and Officer Mitchell, who was already on scene. N.T. Trial, 3/21/11, at 102. He recalled that the victims' description of the assailants was of two black males in their late teens to early twenties, approximately 5'9" tall. One man was reported to be wearing a white t-shirt, baggy pants, and a red baseball cap with dreadlocks in his hair. The other was reported to be wearing a white t-shirt, black baseball cap, and carrying a backpack. *Id*. at 103. Officer Causey located and detained two men who appeared to match the reported ages, were walking together, and wearing ball caps. Appellant was wearing a red ball cap, and a red shirt with a white shirt underneath. *Id*. at 105. His companion was wearing a black baseball cap, white t-shirt, jeans,

- 4 -

and had a backpack. *Id*. Officer Mitchell then transported the victims to Officer Causey's location, where the victims, seated together in the patrol car, identified the men as the robbers. *Id*. at 106, 61-62.

In reviewing a decision denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). We limit our review to the evidence of record and the factual findings of the PCRA court. Provided the PCRA court's ruling is free of legal error and supported by record evidence, we cannot disturb its ruling. Where the issue is one of law, our standard of review is *de novo* and our scope of review plenary*. Id*.

Appellant's sole claim challenges trial counsel's effectiveness. In order to obtain PCRA relief on these grounds, Appellant must establish each of the following: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act. *Commonwealth v. Pander*, 100 A.3d 626, 631 (Pa.Super. 2014) (citing *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011)). Where the alleged ineffectiveness pertains to a failure to file a suppression motion, Appellant must show proof of the merit of the underlying suppression claim. *Commonwealth v. Carelli*, 546 A.2d 1185, 1189 (Pa.Super. 1988). Prejudice is established if the litigant can establish that, if the evidence had been suppressed, there is a reasonable

probability the verdict would have been more favorable. ***Commonwealth v. Arch***, 654 A.2d 1141, 1143 (Pa.Super. 1995).

We begin our analysis by discussing the PCRA court's disposition of this claim. The PCRA court found that Appellant failed to establish any facts that would warrant relief.

> At the PCRA hearing, Petitioner did not testify. The lone witness was Petitioner's trial counsel.
> . . .
>
> Petitioner presented no additional evidence. He did not present any evidence concerning the circumstances of the identification. There was no evidence presented concerning how much time the victims had to view the actors or what type of physical descriptions the victims provided of the actors. No evidence was presented suggesting that the victims' description of the actors' clothing was inconsistent or that Petitioner was one of only two suspects presented by the police to the victims in this case.

PCRA Court Opinion, 11/5/15, at 2-3.

Appellant states the PCRA erred by not considering the suppression claim in light of the testimony adduced at trial. We agree. In ***Commonwealth v. Hill***, 104 A.3d 1220 (Pa. 2014), our Supreme Court analyzed a claim of failure to seek suppression of evidence. As in the case *sub judice*, no pre-trial motion was filed. **Hill** observed:

> Because the issue involves a failure to seek suppression, there is no pre-trial suppression hearing record. The courts below focused on competing factual accounts, including appellee's testimony, offered at the PCRA hearing, without looking to the trial record; the parties' appellate presentation to this Court has a similar focus. However, because appellee's various statements to police were introduced at trial, the trial transcript also includes

substantial evidence relevant to the circumstances surrounding those statements.

*Id*. at 1222. "[T]he fact remains that the record contains the trial transcript, and that transcript contains sworn testimony directly relevant to the claim presented on collateral attack[.]" *Id*. at 1240.

Herein, the sworn testimony offered by the Commonwealth in its case-in-chief is relevant to the suppression claim, and should have been considered by the PCRA court. Moreover, had the asserted pre-trial motion been filed, the burden would have fallen on the Commonwealth to establish that the identification procedure was not unduly suggestive. *Commonwealth v. Johnson*, 668 A.2d 97, 103 (Pa. 1995). We find that the PCRA court committed legal error in dismissing the petition on this basis, and we will therefore consider the claim *de novo*.

We first address the substantive aspects of the ineffectiveness allegation. Appellant asserts that the victims' ability to identify the perpetrators at trial was tainted due to the suggestive show up procedure.

Clearly, transporting the victims to where Appellant and his companion were detained by police was suggestive to some extent. "Suggestiveness arises when the police employ an identification procedure that emphasizes or singles-out a suspect." *Commonwealth v. Davis*, 17 A.3d 390, 394 (Pa.Super. 2011). However, our inquiry is not whether the procedure was suggestive but whether it was unduly so, to a degree that the subsequent

in-court identifications were rendered unreliable. We have consistently held that, "Absent some special element of unfairness, a prompt 'one on one' identification is not so suggestive as to give rise to an irreparable likelihood of misidentification." **Commonwealth v. Wade**, 33 A.3d 108, 114 (Pa.Super. 2011) (quoting **Commonwealth v. Moye**, 836 A.2d 973, 976 (Pa.Super. 2003)).

Prior cases have described the type of show up employed herein as proper police procedure when a suspect is located shortly after the incident.

> The facts outlined above indicate that the victim's prompt complaint enabled the police to use the description provided so as to track down and locate appellant almost immediately after the perpetration of the robbery. Less than one half hour after the crime, the police were able to present appellant for a viewing by the victim. This is proper procedure. Absent some special element of unfairness, prompt, one-on-one identification is not *per se* violative of the accused's constitutional rights, even where the accused has been returned to the scene of the crime in a police cruiser.

**McElrath v. Commonwealth**, 592 A.2d 740, 743 (Pa.Super. 1991). Moreover, we have explained that prompt show ups are "permissible, if, indeed, not favored":

> Appellant first contends that the one-on-one confrontation with Miss Kirby at the hospital was illegal, and that Miss Kirby's identifying him there as well as at trial should have been suppressed. We are not persuaded by appellant's argument, however. As appellant maintains, it is certainly true that identification evidence is inadmissible if it is obtained as the result of a procedure so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny due process of law. **Stovall v. Denno**, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); **United States v. Wade**, 388 U.S. 218, 87 S.Ct.

1926, 18 L.Ed.2d 1149 (1967); ***Commonwealth v. Jenkins***, 232 Pa.Super. 523, 335 A.2d 463 (1975). On the other hand the courts also recognize that confrontations between victim and suspect shortly after the occurrence of a crime may be desirable from the standpoint of the suspect as well as from that of law enforcement authorities. . . . Hence, while one-on-one confrontations are generally condemned, those which occur soon after the commission of a crime are permissible if, indeed, not favored.

***Commonwealth v. Bullock***, 393 A.2d 921, 922–23 (Pa.Super. 1978) (some citations omitted).

In light of these principles, we have consistently declined to hold that show up procedures are unduly suggestive. ***McElrath***, ***supra***; ***Commonwealth v. Armstrong***, 74 A.3d 228 (Pa. Super. 2013) (victim heard noise at window and saw appellant, who was then apprehended by police based on description; victim taken to appellant's location and identified him); ***Moye***, ***supra*** (appellant was only person present in police van where he was handcuffed; other circumstances rendered identification reliable). We find that the process utilized in the case at bar was not unduly suggestive. Moreover, there is no allegation or record evidence to suggest that the police officers influenced or coerced the witnesses in any way.[2]

_____

[2] In discussing the constitutional check of due process on unreliable witness identifications, the United States Supreme Court has stated: "A primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances, the Court said, is to deter law enforcement use of improper lineups, showups, and photo arrays in the first place. Alerted to the prospect that identification evidence improperly obtained may be excluded,
*(Footnote Continued Next Page)*

Having determined that the use of the procedure does not warrant suppression, we now must determine whether the identification was reliable despite the suggestive show up.[3] "The paramount aim of our law, nevertheless, is to judge the reliability of the identification." *Commonwealth v. Baker,* 614 A.2d 663, 668 (Pa. 1992). We have consistently analyzed whether the identification is reliable under the following principles.

> "Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors." *McElrath* [*supra*]. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: "the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation." *McElrath*, 592 A.2d at 743 (citation omitted). The corrupting effect of the suggestive identification, if any, must be weighed against these factors.

*(Footnote Continued)* ────────────────

the Court reasoned, police officers will guard against unnecessarily suggestive procedures. This deterrence rationale is inapposite in cases, like Perry's, in which the police engaged in no improper conduct." *Perry v. New Hampshire*, 132 S. Ct. 716, 726 (2012) (internal citation and quotation marks omitted).

[3] We note that Appellant does not specifically allege that trial counsel should have further challenged the in-court identifications as impermissibly tainted by the show up identification. *See Johnson*, *supra* (motion to suppress in-court identification cannot be entertained absent showing that the pre-trial process was unduly suggestive).

- 10 -

> *Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799 (1983).

*Wade*, *supra* (quoting *Moye*, *supra*).

Appellant argues that the victims observed their assailants for less than one minute and that Mr. Walk[4] was unable to describe any facial features or distinguishing marks and gave "only a vague description of the actor's white shirt and ball cap." Appellant's brief at 22. He additionally avers that Mr. Walk focused on the gun rather than the perpetrator's face.

The Commonwealth counters by highlighting that both victims identified Appellant and the co-defendant based on observations of the actors' faces and physical features. Moreover, Mr. Walk testified that he was facing Appellant and focused on his features.

We find that Appellant has failed to demonstrate arguable merit. The show up procedure had minimal corrupting effect when weighed against all other factors. Appellant's claim that Mr. Walk focused on the gun is belied by the record. N.T. Trial, 3/21/11, at 59. Moreover, the victims had an opportunity to view their assailants, and did so. The robbery portion of the encounter lasted approximately one minute, and Mr. Walk stated he observed Appellant sitting on a park bench before the robbery occurred. As to timing, the victims called police within fifteen minutes of the robbery, and

_____

[4] Ms. Seastedt testified that Mr. Walk had a better look at Appellant, while she had a better view of the co-defendant. N.T. Trial, 3/21/11, at 66, 70.

identified the actors approximately thirty minutes later. Thus, the total time between the incident and the show up was approximately forty-five minutes. Appellant was not entitled to suppression, and thus, counsel was not ineffective in failing to seek it.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/19/2016