Commonwealth *v.* Paschall, Appellant.

Argued March 20, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*David I. Grunfeld,* for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., June 13, 1969:

Appellant maintains that his conviction by a judge sitting without a jury is not supported by the evidence.

The facts in this case are as follows.

On the evening of October 26, 1962, appellant, his pregnant wife and two friends visited the G. G. Bar in Philadelphia. Shortly thereafter, appellant's wife took sick or began labor and appellant, dressed in a white rain coat, left the bar after announcing his intention to get a car so that he could take his wife to the hospital. The bartender testified that about five or ten minutes later, a man, six feet tall, dressed in a black trench coat with a black veil over his face, entered the bar, approached him and displayed a gun stating: "This is it." In response, the bartender handed the robber a bag of money. The robber left, the bartender walked to the back of the bar, borrowed a dime, and called the police. He did not mention to the patrons that he had been robbed.

Five minutes after the alleged robbery, appellant returned to the bar dressed in a white raincoat. The police arrived at about the same time. They drove appellant's wife to the hospital. At least one hour after the alleged robbery and fifteen to twenty minutes after the bartender went to the police station for

extended interrogation, he identified appellant as the robber.

The basis for the identification was stated at trial.

"Q. Is there any question in your mind, Mr. Baker, but that the defendant is the man who held you up? A. Well, there are just two fellows in our neighborhood built like this boy. . . . Q. You knew at the time he was the robber, or did you think it might have been somebody else? A. I had to pull my mind together. Q. What makes you certain that (appellant) is the man, rather than Mr. Rush? A. Well, Mr. Rush was there when the holdup occurred. Q. But still you believe that Mr. Rush might have been the one who committed the robbery? A. Yes. . . . Q. You mentioned to the District Attorney you were not sure, are you still not sure? A. I will put it like this: The man had a veil over his face, but he had a built (sic) I could recognize. . . . Q. Didn't you say you had been drinking that night? . . . How much did you have to drink? . . . A. Ten (drinks) would be about right, or maybe a little less. Q. So that you had been drinking quite a bit? A. Yes."

The bartender also stated that he was able to recognize appellant's voice, as he had known him for many years. But, he failed to state that this factor contributed to his identification of appellant as the robber. Indeed, the court sustained an objection to a leading question which asked the bartender whether he had in fact recognized appellant's voice when the robber stated "This is it." Thereafter, this line of questioning was abandoned by the prosecution.

This case stands or falls upon the "build" identification of appellant made by the bartender. The lower court's opinion states that "the identification evidence (in and of itself) was . . . sufficient to convict the defendant."

This identification, however, was so speculative as to be valueless.

The bartender, at the time of the alleged robbery, had ten drinks or "a little less." By his own standards he "had been drinking quite a bit." In this state, he identified appellant as the robber predicated on the basis that he recognized his build. Even this basis, however, was qualified, as the bartender stated that another person with a build resembling that of appellant might have committed the robbery. He only dismissed this suspect from consideration, because that person was in the bar during the course of the robbery. This analysis leaves open the possibility that another person with a build similar to that of appellant may have been the robber. Thus, when the bartender stated "There are just two fellows in our neighborhood built like this boy." he improperly excluded the possibility that another person, outside his circle of acquaintances, might have been the felon. No allegation was made that appellant's build was unique so that no other person with a similar build could exist. Indeed, the record is devoid of any mention that appellant's build was in any way peculiar.

In *Commonwealth v. Kloiber,* 378 Pa. 412, 424, 106 A. 2d 820 (1954), the Supreme Court stated that "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification ... the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution."

This language refers to facial identification, which is demonstrably unique. The same is true, in some degree, of voice identification. See *Commonwealth v. Johnson,* 201 Pa. Superior Ct. 448, 193 A. 2d 833 (1963). An identification, however, which is based

upon the build of a defendant is much weaker. Unless there be some deformity, any man's build resembles that of many others. Thus, a qualified "build" identification cannot and should not serve as the sole basis for a conviction as it did in the lower court.

. Moreover, the other factors in this case are inconsistent with appellant's guilt. These factors are 1) at the time of the robbery appellant's wife was undergoing either labor or other distress, 2) appellant both immediately before and after the robbery was seen wearing a white raincoat while the robber wore a black trench coat and 3) the bartender during the first hour of his interrogation by the police failed to identify appellant as the robber. Since appellant was well known in the bar, having worked there several times a week as a "bouncer", such identification should have been made swiftly and rapidly.

The Commonwealth, however, in its brief points out that appellant prior to the robbery, stated in a kidding manner to the bartender that he was going to rob the bar. This factor was not relied on by the lower court. In addition, at the time neither the bartender nor those patrons who heard the statement regarded it as an unusual threat, just as a good joke. In any event this statement is not evidence that appellant participated in the robbery. Indeed, it is hard to believe that a prospective robber would announce his plan to his intended victim and shortly thereafter seek to shield his identity during the commission of the crime.

This case, therefore, falls within the familiar rule that "the theme of guilt must flow from the facts and circumstances proved, and be consistent with them all. Commonwealth v. Evans et al., 190 Pa. Superior Ct. 179, 154 A. 2d 57 (1959). The facts and circumstances must not only be consistent with and point to the guilt of the accused but they must be inconsistent with his innocence." *Commonwealth v. Nichols,* 206 Pa. Supe-

rior Ct. 352, 361-362, 213 A. 2d 105 (1965). As such they must be proved beyond a reasonable doubt. *Commonwealth v. Gooslin,* 410 Pa. 285, 189 A. 2d 157 (1963).

Therefore, judgment of sentence is vacated and appellant is discharged.

WRIGHT, P. J., WATKINS and MONTGOMERY, JJ., dissent.