411 A.2d 1249

**COMMONWEALTH of Pennsylvania**

v.

**James KENNEDY, Appellant.**

Superior Court of Pennsylvania.

Argued July 17, 1979.

Filed Oct. 12, 1979.

Petition for Allowance of Appeal Denied Feb. 8, 1980.

John Paul Curran, Philadelphia, for appellant.

Steven J. Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, NIX and WEKSELMAN, JJ.*

NIX, Judge:

Appellant Kennedy was convicted for first degree murder and possession of an instrument of crime following a bench trial and sentenced to life imprisonment. He raises five issues for our review, the first of which concerns the sufficiency of the evidence to support his convictions.

To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the [trier of fact] could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact-finder is free to believe all, part or none of the evidence. *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1978).

The record indicates that there was sufficient evidence to convict appellant of first degree murder. Pamela Brown, the sister of the victim, testified that the morning of May 4, 1976, the doorbell rang three times, a ring appellant used, and that her brother James ran downstairs to answer it. Ms. Brown said that she recognized the visitor's footsteps as being those of appellant because he had lived in their home during a prior summer. After appellant entered, Ms. Brown heard talking but could not understand what was being said. After about five minutes, she heard a shot followed by five more shots. She ran downstairs and outside and saw appellant fleeing on a ten-speed bicycle. She called to him and asked "Jazzmo, why did you do this to James?" Appellant, whose nickname is Jazzmo, looked around but kept going.

* Justice ROBERT N. C. NIX, Jr. of the Supreme Court of Pennsylvania, and Judge I. MARTIN WEKSELMAN of the Court of Common Pleas of Allegheny County, Pennsylvania, are sitting by designation.

James Williams, who lived across the street from the Browns' house, testified that he was standing at an open window on the first floor of his house talking with a lady standing on the sidewalk when he heard two shots and saw a boy run out of the Browns' house and jump on a bike. He saw and heard Ms. Brown yell "Call the law. Call the Law." Mr. Williams identified appellant at trial as the person he saw leave the house and flee. Police officers found James Brown dead with a $5 bill and a .38 caliber revolver with six spent casings in it lying near the body. The parties stipulated that the cause of death was six gunshot wounds to the head and trunk of the victim fired from close range. Appellant testified in his own behalf and denied that he had either killed the victim or had seen him the day of the murder.

Appellant contends that there was insufficient evidence to identify him as the killer and he challenges the identification by Ms. Brown and Mr. Williams as being too speculative because neither saw the killer's full face. These contentions are without merit. "There is no requirement that a killing, or a first degree murder for that matter, be proven by positive eyewitness testimony." *Commonwealth v. Comer Glass*, 486 Pa. 334, 341, 405 A.2d 1236, 1239 (1979). Appellant's contentions revolve around issues of credibility which are left to the fact finder to resolve. *Commonwealth v. Farquharson*, 467 Pa. 50, 59, 354 A.2d 545, 550 (1976). It is also argued that Ms. Brown's identification of him as the killer based on his footsteps is too speculative, *citing Commonwealth v. Paschall*, 214 Pa.Super. 474, 257 A.2d 687 (1969) as support. In *Paschall* the Court determined that an identification based on the "build" of the assailant is weaker than a facial or voice identification, and in the absence of some deformity in defendant's build, a qualified identification based thereon could not serve as the sole basis for a conviction.

If the jury had been required to rely only upon Ms. Brown's recognition of appellant's footsteps, the *Paschall* rationale might well be applicable, absent a showing that there was some unique or distinguishing feature as to appel-

lant's walk. However, this was not the case. In addition to the recognition of appellant's footsteps, Ms. Brown knew appellant for a substantial period of time prior to the incident and recognized his manner of ringing the bell. Immediately following the shots she observed appellant riding away from the home on a bike. When she called to appellant by name, he responded by turning in her direction and then proceeded to leave the area. Finally, the testimony of Mr. Williams established that the person on the bike was in fact the same person who emerged from the house immediately after the shots were fired. This factual situation is obviously distinguishable from that discussed in *Paschall*, and provided ample basis for a jury finding that appellant had fired the shots.

■ Appellant's second contention of error is that the judge who sat as fact finder improperly considered, in finding appellant guilty, evidence concerning the gang affiliation of the appellant and defense witnesses although this information had been objected to and the objection sustained by the Court during trial. Appellant contends that the Court, by describing the killing as an "assassination-type" killing implied that the killing was gang related. This argument is specious. Where an individual is shot six times at close range without any evidence of provocation, it is appropriate to describe it as an assassination, implying only an intentional and premeditated homicide.

Appellant's third contention is that he was denied the effective assistance of counsel. Appellant's present counsel [1] contends that trial counsel was ineffective for failing to demand an offer of proof as to Mr. Williams' proposed testimony, for failing to demand a line-up to test the accuracy of Mr. Williams' identification of appellant in less suggestive circumstances, and for failing to re-instate his suppression motion as to Mr. Williams' identification of appellant.

1. On this appeal, appellant is represented by counsel other than his trial counsel.

■ Trial counsel was not ineffective for failing to demand an offer of proof as to Mr. Williams' proposed testimony. When the Commonwealth called Mr. Williams to testify, trial counsel requested and was given a copy of the witness' recorded statement as well as a recess in the trial for him to review the statement. Under these circumstances, a request for an offer of proof as to the witness' testimony was unnecessary since counsel then knew, based on the witness' statement, the content of Mr. Williams' proposed testimony. Accordingly, trial counsel was not ineffective for failing to demand an offer of proof.

■ Appellant's contention that his trial counsel was ineffective for failing to demand a line-up is based upon the Superior and Supreme Courts' opinions in *Commonwealth v. Sexton*, 246 Pa.Super. 30, 369 A.2d 794 (1977), (reversed) 485 Pa. 17, 400 A.2d 1289 (1978).

This argument ignores the fact that prior to trial the defense was not aware of any identifying witnesses other than the victim's sister, who knew appellant.[2] A request for a *Sexton* type line-up by Ms. Brown would have only bolstered her testimony since there was no question that she could identify appellant in a lineup. Moreover, it is not argued that counsel was ineffective for not knowing in advance of trial that the witness, Mr. Williams, would identify appellant. Rather, the thrust of this contention is that counsel should have requested that the trial be interrupted prior to his being called to the stand to have his identification tested by a line-up procedure. Clearly, the Supreme Court's decision in *Sexton* provided no authority for the novel principle that an accused has the right to require a line-up *in the midst of trial.*

2. As previously noted, Mr. Williams was called by the Commonwealth as a witness at trial. Counsel requested and was granted the right to examine the recorded statement that Mr. Williams had given to the Commonwealth. It was not until this point in the proceeding that the defense became aware that it would be required to meet identification testimony from any source other than the victim's sister.

▮▮ Appellant's allegation that trial counsel was ineffective for failing to move to suppress Mr. Williams' identification testimony must also fail. Although "[t]he failure to file a suppression motion may be evidence of ineffective assistance of counsel, . . . if the grounds underpinning the suppression motion or objection are without merit, counsel will not be deemed to have been ineffective in failing to so move or object." *Commonwealth v. Ransome*, 485 Pa. 490, 494, 495, 402 A.2d 1379, 1381–1382 (1979) (citations omitted). Appellant bases his allegations of ineffectiveness upon the Superior Court's opinion in *Sexton* which emphasized the suggestivity of in-court identifications. The Supreme Court stated in *Commonwealth v. Ransome*, 485 Pa. 495, 402 A.2d at 1382:

> After reviewing recent decisions of the United States Supreme Court, we concluded [in *Sexton* ] that the suggestiveness of a challenged confrontation is only one factor to be considered in determining the admissibility of identification testimony. Suggestiveness alone does not warrant exclusion. Instead "[i]t is the likelihood of misidentification which violates a defendant's right to due process, and it is this which [is] the basis of the exclusion of evidence." *Id.*, 485 Pa. at 22, 400 A.2d at 1291, quoting *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

> The reliability of a challenged identification is to be judged under a test employing the totality of the circumstances. The factors relevant to determining the reliability of the identification are:

> . . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

The Supreme Court in *Sexton* found the in-court confrontation to be "highly suggestive" but still reliable and admissible.[3] When the suggested criteria are applied to the instant case, it is clear that appellant's trial counsel would not have had any basis to challenge the reliability of Mr. Williams' identification. Therefore, he was not ineffective for failing to move to suppress the identification. *Commonwealth v. Ransome, supra.*

In a *pro se* supplemental brief filed with this Court, appellant raises four additional reasons for reversal. Three of these concern allegations that his trial counsel was ineffective; the fourth concerns the claimed denial of appellant's appellate rights.

▮▮▮▮ Appellant's first *pro se* allegation is that trial counsel was ineffective because he failed to inform appellant on the record of his right to withdraw his waiver of a jury trial pursuant to Rule 1102(b) of our Rules of Criminal Procedure. This novel claim must be rejected. This argument obviously springs from a misunderstanding of the provisions of Rule 1102(b). Rule 1102(b) provides:

> At any time prior to the commencement of trial the defendant may withdraw his waiver of a jury trial. Thereafter, at any time prior to verdict the trial judge on his own motion may order the withdrawal of such waiver or permit the defendant, upon motion, to withdraw his waiver.

It is clear from the language of this section that once trial has commenced that a waiver may be withdrawn prior to verdict only where there is some reason to justify such a request. The absolute right of appellant to withdraw the waiver ends at the commencement of the trial. Since the waiver colloquy was immediately followed by the entry of the waiver and the commencement of trial, appellant would have had the right to withdraw his waiver only upon a

---

**3.** The Court remanded for a new trial in which the jury would be cautioned that the defendant had been denied an opportunity to have the identification tested in a line up which would have been less suggestive than the in-court identification.

showing of some basis for the request to withdraw the waiver. Since there was no basis in this case for the withdrawal of the waiver, once it was entered and trial commenced there was no reason for counsel to have instructed his client (or requested that the court do so) on the circumstances that might justify the withdrawal of a waiver of jury.

■ Appellant's second claim is that trial counsel was ineffective for stipulating to the contents of the medical examiner's autopsy report on the victim, citing *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974), as support. This argument is frivolous. *McCloud* held that the business records exception to the hearsay rule will not render disputed hearsay in autopsy reports admissible over defense counsel's objections. Here, on the other hand, defense counsel stipulated to the contents of the autopsy report because there was no question as to the cause of death—namely six gunshot wounds to the victim's head and body. In addition, at the time the stipulation was made, the trial judge fully and carefully explained to appellant the consequences and effects of his counsel's stipulation to the autopsy report. Trial counsel was not ineffective in stipulating to the report.

■ Appellant's third *pro se* claim is that trial counsel was ineffective for failing to demand that a ballistics expert testify to substantiate the Commonwealth's theory that death was caused by a firearm. This argument is patently absurd. The autopsy report indicated that the victim had been shot six times and a revolver was found near the body. Testimony by a ballistics expert that the wounds were caused by a firearm would have been ridiculous.

Appellant's last *pro se* argument is that he was denied his appellate rights because the trial court did not inform him that issues not raised in post-verdict motions would be waived on appeal. *See* Criminal Procedure Rule 1123(c). Because the record indicates that the trial judge did advise appellant on the record that post-verdict motions were re-

quired in order to preserve issues for appeal, we must reject this argument as well.

Judgments of sentence are affirmed.