423 A.2d 1296

COMMONWEALTH of Pennsylvania, Appellant, at Nos. 591, 592,

v.

Keith David SMITH, Appellant, at No. 620.

Appeal of Joseph Isaiah GOULD, at No. 621.

Superior Court of Pennsylvania.

Submitted April 18, 1978.

Filed Jan. 5, 1981.

John Lee Brown, Jr., Assistant District Attorney, Beaver, for Commonwealth, appellant in Nos. 591 and 592 and appellee in Nos. 620 and 621.

Harry E. Knafelc, Assistant Public Defender, Beaver, for appellant in No. 620 and appellee in No. 591.

John P. Donhanich, Assistant Public Defender, Beaver, for appellant in No. 621 and appellee in No. 592.

362

Before JACOBS, President Judge, and HOFFMAN, CER-
CONE, PRICE, VAN der VOORT, SPAETH and HESTER,
JJ.

WATKINS, Judge:

This is an appeal by the Commonwealth from an order of
the Court of Common Pleas of Beaver County granting
defendants-appellants motion for a demurrer.

. The sole question is whether the Commonwealth presented
sufficient evidence at trial so as to enable a finder of fact to
decide whether defendants committed the robbery which
was the subject matter of the charges on which they were
tried.

On the evening of October 23, 1975, the Sun Drug Store in
Beaver Falls was the scene of a robbery. As Theresa
Alberti, a clerk in the store, was locking the front door a
black male entered the store by pushing his way through the
door, pushed her to the floor and attempted to open a cash
register. None of the witnesses who testified at trial (Ms.
Alberti and several store patrons) could see the man's face
because he wore an orange ski cap. Failing to open the cash
register, the man fled from the store. Outside the store, he
was met by another man and both culprits fled along a path
leading to the Mt. Washington section of White Township.

The police were promptly notified of the incident and
detained the defendants approximately three blocks from
the exit of the path into the Mt. Washington area. The
defendants were then brought back to the scene of the crime
and identified as the culprits, although some of the witness-
es expressed the belief that the defendants had exchanged
coats. Defendants were then arrested and brought to trial
on February 24, 1977 after which the court below granted
defendants' demurrer to the evidence presented by the Com-
monwealth. The court concluded that the identifications of
the defendants at trial were insufficient to convict them of
the charges (robbery and conspiracy). From that decision
the Commonwealth appeals. The sole issue, therefore, is
whether the identification testimony was sufficient to send
the case to the jury.

At the trial, Ms. Alberti described the man who entered the store as "black" "slim," wearing a "short brown jacket" and a "tassel cap". She also testified that she observed a wallet or billfold with a chain around it in his back pocket and identified a chain in court as the one she saw that night. Upon cross-examination she admitted that she could not tell whether it was one of the defendants who was wearing the jacket.

Louise Blair, another store employee who was present when the incident occurred, also testified at trial. She could not see the face of the culprit who entered the store, but testified that he wore a "orangish colored jacket with blue, light and darker pants; and that he wore a ski mask over his face". She described the culprit as a "tall, thin black man". She saw the coat that same night on the defendant Gould when he was brought to the store by the police. Then the police brought in defendant Smith and had him wear the same coat. The witness testified that the orange coat fit Smith, the thinner man, and did not fit Gould, a stocky man. The defendants were brought into the store about twenty minutes after the incident. She also testified that the culprit was black, as she saw his hands during the incident.

Viola Barr, a customer of the store, also testified at trial. She stated that the robber was black, wore a ski mask, wore a "beige" coat or "tan" coat and that "it was sheep lined around the neck and around the bottom of the coat and the sleeves". She also testified that he wore "tight faded jeans" and a "dark colored suit". She observed a billfold in his back pocket and a chain on the billfold "that hooked on the front of his pants". She stated that he wore black shoes. She testified that later that evening the police brought the two defendants to the store and first brought in Gould wearing the jacket that she saw during the robbery. She testified that when the police brought in defendant Smith wearing the orange jacket that she identified him as the robber and that the jeans, orange jacket and wallet with chain worn or carried by Smith "all fit the one" who had tried to hold up the store. At first the police brought in

Smith wearing the long, blue coat but she testified that blue coat didn't fit Smith, the thinner man but the orange jacket did fit him and did not fit Gould.

James Bebout, another store patron, was also called by the Commonwealth as a witness. He stated that the culprit who entered the store was "black", had a ski mask on, wore a "tan or gold coat, like Sheepskin around the collar", "blue jeans", and carried a billfold and chain in his "back right-hand pocket". Bebout followed the culprit out of the store where he observed him joining a second individual who was waiting outside the store. The second man was a "stocky" build, was black, and wore a long, navy blue coat. The two men ran "off up the path which leads up to the Mt. Washington area". Later that evening when the police brought the two defendants to the scene, Bebout testified that defendant Gould, the stockier man was wearing the tan jacket and that defendant Smith was wearing the blue coat. He identified the defendant Smith as the one who was in the store earlier from the faded blue jeans, dark shoes, billfold and chain that he wore or carried and from the peculiar way that he walked and "moved" which the witness described as resembling a "strut".

Officer Austin A. Wilson, the White Township Police Chief, testified that on the evening in question, he received a radio call informing him of the robbery and describing the suspects who entered the store as a "black male wearing an orange coat with fur trim around the collar and sleeves". The second suspect was described as a "black male, wearing a long, dark, blue or black pea type coat". Near the Mt. Washington area he observed a "black male in a long dark, blue coat" and a "second male in a white T-shirt". He then observed the second suspect remove a "tan or orange colored type jacket with fur along the collar and sleeves from his car". Defendant Smith was identified as the person wearing the dark pea coat and defendant Gould was wearing the white T-shirt. Austin detained the defendants and turned them over to the Beaver Falls Police Department. Officers of that police department then took the defendants back to

the store where the aforementioned events occurred. It was determined that on the evening in question the weather was cool and that it was "drizzling".

The Commonwealth's contention is that the above testimony was sufficient to send the case to the jury and that the court below erred when it granted defendants' motion for the demurrer.

Where the Commonwealth's sole identification evidence is based on similar height, coloration and clothing it will not be enough to convict a defendant as the perpetrator of a crime. *Commonwealth v. Crews*, 436 Pa. 346, 260 A.2d 771 (1970). A suspect cannot be convicted of an offense when the sole identification testimony linking him to the crime is that he had a similar build as the culprit who committed the offense. *Commonwealth v. Paschall*, 214 Pa.Super. 474, 657 A.2d 687 (1969). However, the test of sufficiency of evidence is whether, accepting as true all the evidence presented by the prosecution and all reasonable inferences therefrom, which if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime. Circumstantial evidence alone is sufficient to convict a person and direct evidence is not absolutely needed in order to sustain a conviction. *Commonwealth v. Thomas*, 459 Pa. 329, 371 A.2d 227 (1974); *Commonwealth v. Finnie*, 415 Pa. 166, 202 A.2d 85 (1964). In the instant case, the Commonwealth presented evidence of more than a similarity in height, clothing, color and build.

The testimony indicates that a black male of thin build forcibly entered the store and attempted to remove money from the cash register. The culprit was wearing a highly identifiable jacket of a tan or orange color with a "fur" or sheepskin lined collar, faded blue jeans, dark shoes and carried a billfold with a chain around it in his hippocket. After failing to open the cash register he and another black male who was waiting outside the store and who was described as a black male of stocky build and wearing a dark, navy pea coat ran off toward an area known as the Mt. Washington area of the town.

 Within twenty minutes of the robbery, the defendants, two black males were arrested near the Mt. Washington area. Defendant Smith was then attired in the dark, pea coat which didn't fit him. Defendant Gould was found removing the orange "sheepskin" jacket from his car. The orange jacket did not fit him because it was too tight. It did fit defendant Smith. The proximity in time and place to the crime, the fact that both defendants were found in proximity to each other near the area where the culprits were last seen, the relative uniqueness of the tan or orange colored jacket, the fact that the jackets found in possession of each defendant did not fit him very well but fit the other defendant, the fact that defendant Smith carried a highly identifiable billfold which was identifiable because of the chain he carried with it, and the fact that defendant Smith walked in a peculiar manner described by one witness as a "strut" or "cocky" coupled with the similarity in color, clothing and build between the perpetrators of the crime and the defendants, taken together, were sufficient facts upon which a jury could conclude that defendant Smith forcibly entered the store in order to rob it.

 He acted in concert with defendant Gould who aided Smith in attempting to confuse the witnesses by exchanging jackets with Smith after the incident. Size, height, weight, hair, clothing, body build, color, location and mannerisms are all acceptable methods of identifying a person. Of course facial identification is the strongest identification testimony. But in its absence, such as the instant case where the culprits wore masks, a combination of the above elements, if sufficiently reliable, may sustain a conviction. We hold that in the instant case the combination of elements, unlike the situation in *Crews and Paschall*, supra, where the only identification evidence linking defendant to the crime was a similarity of a sweater (Crews) or body build (Paschall), was sufficiently reliable to enable a jury to infer that the defendants were guilty of the offense beyond a reasonable doubt.

The order of the court below granting the defendants' demurrer is reversed; and order denying Motion for Directed Verdict is reversed.

CERCONE, President Judge, concurs in the result.

JACOBS, former President Judge, did not participate in ° the consideration or decision of this case.