J-S18034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOVANNE HEATH | |
| Appellant | No. 1703 EDA 2016 |

Appeal from the Judgment of Sentence May 6, 2016
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0000949-2014

BEFORE: PANELLA, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED APRIL 11, 2017**

Appellant, Jovanne Heath, appeals from the judgment of sentence imposed in the Philadelphia County Court of Common Pleas after he was found guilty of robbery,[1] conspiracy,[2] and possession of an instrument of crime[3] at a nonjury trial. Appellant claims that the evidence was insufficient to sustain the trial court's finding that he was involved in the above-stated crimes. We affirm.

The trial court summarized the evidence presented at trial as follows.

> The complainant, Mr. Jerry Slueue, testified that in the late night to early morning hours of January 4, 2014, he was the victim of a robbery outside of his sister's home at

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(ii).

[2] 18 Pa.C.S. § 903.

[3] 18 Pa.C.S. § 907.

6333 Kingsessing Ave. in the city and county of Philadelphia, when a firearm was pointed at him and his two cell phones were taken. Earlier on the night in question, Mr. Slueue was out celebrating his return to the country from playing soccer in Italy. After leaving the first nightclub, where he was attending an "all white party," where it is customary for attendees to wear white clothing, Mr. Slueue observed Defendant, wearing a white blazer and white pants, at a second nightclub staring at him. Subsequently, Mr. Slueue left the second nightclub in order to take "the girls that [he] went out with that night" home. As he was leaving the club, Mr. Slueue saw a blue Nissan driving slowly by him with its headlights off.

After dropping off the girls, Mr. Slueue returned to his sister's home and again saw the same blue Nissan stopped in front of his sister's house at which point one of the car's occupants asked him for directions to a club. Mr. Slueue was able to see that the driver of the vehicle was wearing "all white pants and a white blazer." After giving directions to the club, Mr. Slueue turned to enter the house, but was accosted before he could enter. The assailant, pointing a black firearm at Mr. Slueue, took his two cell phones. The assailant then returned to the blue Nissan, which drove off. Mr. Slueue went inside the house and immediately called the police to report the robbery.

Approximately 15 minutes later, police arrived at the house and advised Mr. Slueue that a suspect was in custody. On arriving at the scene, Mr. Slueue recognized the Nissan, the firearm used in the robbery, and his cell phone. Mr. Slueue recognized his cell phone by way of its make and model, and because it had his photos on it. Mr. Slueue also recognized [Appellant] as the driver based on the white clothing he was wearing.

While on routine patrol in a marked patrol car, Officer Justin Kensey of the Philadelphia Police Department, along with his partner, Officer Daniel Marques, received a flash alerting them to a robbery in progress as well as a description of a Nissan as being involved. Officer Kensey observed a Nissan Altima fitting the description provided in the flash traveling northbound on the 1500 block of Cobbs Creek Parkway. As Officer Kensey pulled up behind the

Nissan, which was stopped at a red light, a different marked police car "shined a light" on the vehicle. In response, the Nissan accelerated through the red light at a high rate of speed. Officer Kensey followed the vehicle, which ultimately struck a pole at the 5600 block of Hoffman Ave., at which point the two occupants of the vehicle fled the scene. Officer Kensey pursued Defendant, who was dressed in all white, on foot, eventually taking him into custody.

In the early morning hours of January 4, 2016, Philadelphia Police Detective Carl King was assigned to execute a search warrant on the involved vehicle. Detective King reported to the 5600 block of Hoffman Street, where he testified that he and Detective Blackwell executed a search warrant on the Nissan. During the search, a firearm and a cell phone were recovered. The cell phone was later identified as the one belonging to Mr. Slueue.

Trial Ct. Op., 9/12/16, at 4-6 (record citations omitted).

Appellant, along with a codefendant, Horrain Blair, proceeded to a nonjury trial on January 15, 2016. The trial court found Appellant guilty of robbery, conspiracy to commit robbery, and possession of an instrument of crime, but acquitted him of simple assault. On May 6, 2016, the court sentenced him to aggregate three to seven years' imprisonment.[4]

Appellant timely appealed from the judgment of sentence and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion suggesting that

---

[4] The trial court granted codefendant Blair's motion for judgment of acquittal.

Appellant's claims were waived due to vague assertions of error in his Rule 1925 statement and that Appellant's claims were meritless.

Appellant presents the following question for review:

> WERE THE GUILTY VERDICTS RENDERED BY THE TRIAL COURT CONTRARY TO LAW INSOFAR AS THE EVIDENCE PRESENTED BY THE COMMONWEALTH WAS INHERENTLY CONTRADICTORY AS WELL AS INSUFFICIENT TO SUSTAIN THE VERDICTS?

Appellant's Brief at 3.

We first consider the trial court's suggestion that Appellant's Rule 1925(b) statement was defective and requires waiver of his issue on appeal. Trial Ct. Op. at 2-4. This Court has stated that a Rule 1925(b) statement:

> shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge. The Pennsylvania Supreme Court has explained that Rule 1925 is a crucial component of the appellate process, which is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Moreover, it is well-settled that [i]issues that are not set forth in an appellant's statement of matters complained of on appeal are deemed waived.

***Commonwealth v. Proctor***, --- A.3d ---, ---, 2017 WL 527718, at *2 (Pa. Super. 2017) (citations and quotation marks omitted).

We agree with the trial court that Appellant's Rule 1925(b) statement failed to articulate or even suggest that Appellant intended to challenge the complainant's identification.[5] Therefore, waiver is appropriate under Rule

---

[5] Instantly, Appellant's Rule 1925(b) statement read:

- 4 -

1925(b)(4)(vii).  **See** Pa.R.A.P. 1925(b)(4)(vii); **Proctor**, 2017 WL 527718, at *2.

Nevertheless, our review reveals that no relief is due on Appellant's specific challenge of the evidence linking him to the robbery.[6]  Appellant sole claim is that the complainant's identification of him as the driver of the vehicle was unworthy of belief.  However, we find sufficient corroborative and circumstantial evidence to establish Appellant was the driver of the vehicle involved in the robbery.

When reviewing a challenge to the sufficiency of the evidence,

> [t]he standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and

---

1. Was the verdict(s) of guilty against the "weight of the evidence"?

2. Did the Commonwealth not meet its burden in proving guilt beyond a reasonable doubt, thereby making a "lack of sufficiency of the evidence"?

3. Does the verdict in this case "shock the conscience", such that the defendant should be awarded a new trial?

Appellant's Statement of Matters Complained of on Appeal, 6/22/16, at 1-2.

[6] Appellant's brief focuses on the sufficiency of the evidence regarding his identification as the driver of the suspect vehicle.  He has abandoned his challenges to the weight of the evidence on appeal.  **See Commonwealth v. Briggs**, 12 A.3d 291, 310 n. 19 (Pa. 2011).

circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

* * *

"[E]vidence of identification need not be positive and certain to sustain a conviction." Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. . . . Given additional evidentiary circumstances, "any indefiniteness and uncertainty in the identification testimony goes to its weight."

*Commonwealth v. Orr*, 38 A.3d 868, 872-74 (Pa. Super. 2011) (*en banc*) (citations and emphasis omtitted). Although challenges to a witness's identification generally go to the weight of the evidence, there is a narrow class of claims where identity will give rise to a meaningful sufficiency of the evidence challenge. *Id.* at 874.

In *Commonwealth v. Crews*, 260 A.2d 771 (Pa. 1970), the Pennsylvania Supreme Court held that the following evidence was

- 6 -

insufficient to identify a defendant as being involved in the robbery and fatal beating of a cab driver:

> The testimony, viewed in a light most favorable to the Commonwealth, reveals that two blacks were seen entering a cab, the cab driver was robbed and beaten, and two blacks were seen fleeing. Crews and Tedders, a codefendant whose first degree murder conviction has already been affirmed by this Court,[fn2] fit the very general description of the criminals as to height and coloration. The principal evidence on which the Commonwealth relies is clothing. A witness, Mrs. Schorr, who observed the two men fleeing from the cab, testified that the taller, lighter complexioned one was wearing a gold-colored sweater, while the shorter, darker one was wearing a black leather trench coat. When Tedders was arrested, he was wearing a black leather coat which Mrs. Schorr identified at trial as being the coat she saw. A gold-colored sweater was found in Crews' home. Mrs. Schorr could not positively say that it was the same sweater which the taller felon was wearing, but did indicate that the color appeared to be the same.

> ---

> [fn2] We emphasize that the evidence introduced in Tedder's trial was far stronger than that introduced here. There, four witnesses testified that at different times, Tedders had admitted to them that he had stabbed the car driver.

> ---

> In addition to Mrs. Schorr's testimony, the Commonwealth produced testimony that Crews and Tedders were together in at least three different places on the night of the crime, from 6:00 P.M. at 1:30 A.M. There was testimony that at 7:00 P.M. they were in the Oh Bar, not far from where the two men entered the cab at about 8:30. All of the witnesses testified that Tedders was wearing a black leather coat or jacket. Two witnesses testified that Crews was wearing a gold or an orange sweater.

***Crews***, 260 A.2d at 772 (citation omitted). In holding that the evidence in that case was insufficient, the ***Crews*** Court explained:

> In light of the myriads of people who fit the height and coloration description, and in light of the commonness of a gold sweater and a black trench coat, the evidence failed to point with sufficient certitude to Crews as the perpetrator of the crime. The jury was forced to guess whether it was Crews of another light-complexioned Negro male wearing a gold sweater who committed the crime. Our system recoils at sending a man to prison for the rest of his life on a guess.

***Id.*** The ***Crews*** Court acknowledged, "that circumstantial evidence alone can sustain a conviction, such evidence must point more conclusively toward guilt than does that present in the instant case." ***Id.*** (citation omitted).

In ***Commonwealth v. Smith***, 423 A.2d 1296 (Pa. Super. 1981), this Court distinguished ***Crews*** based on the following corroborative evidence.

> The testimony indicates that a black male of thin build forcibly entered the store and attempted to remove money from the cash register. The culprit was wearing a highly identifiable jacket of a tan or orange color with a "fur" or sheepskin lined collar, faded blue jeans, dark shoes and carried a billfold with a chain around it in his hip pocket. After failing to open the cash register he and another black male who was waiting outside the store and who was described as a black male of stocky build and wearing a dark, navy pea coat ran off toward an area known as the Mt. Washington area of the town.
>
> Within twenty minutes of the robbery, the defendants, two black males were arrested near the Mt. Washington area. Defendant Smith was then attired in the dark, pea coat which didn't fit him. Defendant Gould was found removing the orange "sheepskin" jacket from his car. The orange jacket did not fit him because it was too tight. It did fit defendant Smith. The proximity in time and place to the crime, the fact that both defendants were found in

proximity to each other near the area where the culprits were last seen, the relative uniqueness of the tan or orange colored jacket, the fact that the jackets found in possession of each defendant did not fit him very well but fit the other defendant, the fact that defendant Smith carried a highly identifiable billfold which was identifiable because of the chain he carried with it, and the fact that defendant Smith walked in a peculiar manner described by one witness as a "strut" or "cocky" coupled with the similarity in color, clothing and build between the perpetrators of the crime and the defendants, taken together, were sufficient facts upon which a jury could conclude that defendant Smith forcibly entered the store in order to rob it.

He acted in concert with defendant Gould who aided Smith in attempting to confuse the witnesses by exchanging jackets with Smith after the incident. Size, height, weight, hair, clothing, body build, color, location and mannerisms are all acceptable methods of identifying a person. Of course facial identification is the strongest identification testimony. But in its absence, such as the instant case where the culprits wore masks, a combination of the above elements, if sufficiently reliable, may sustain a conviction. We hold that in the instant case the combination of elements, unlike the situation in **Crews** and [**Commonwealth v. Paschell**, 657 A.2d 687 (Pa. Super. 1969),] where the only identification evidence linking defendant to the crime was a similarity of a sweater (Crews) or body build (Paschall), was sufficiently reliable to enable a jury to infer that the defendants were guilty of the offense beyond a reasonable doubt.

**Smith**, 423 A.2d at 1299.

Instantly, the complainant testified, "the guy in the black [indicating Appellant], I think I saw him at the after hours" club, "looking at me, staring, and stuff like that." N.T., 1/15/16, at 17-18. The complainant stated that he was returning to his home when he noticed a blue Nissan. **Id.** at 23. The complainant described the driver as wearing all white pants

- 9 -

and a white blazer. *Id.* He testified that the person who robbed him went back to the passenger side of the Nissan. *Id.* at 32. After the robbery, he entered his house and called the police. *Id.* at 25. He testified that he later saw Appellant in the back of a police van with his head down, but "recognized him because of the clothes . . . he was wearing."[7] *Id.* at 34. The Commonwealth did not ask the complainant to make an in-court identification of Appellant at trial. Therefore, the reliability of the complainant's identification testimony is suspect. *See Crews*, 260 A.2d at 772.

Nevertheless, the complainant's identification was corroborated by additional evidence. Specifically, Officer Marques testified that at approximately 5:00 a.m., he received a flash report of the robbery and observed a blue Nissan at the corner of 1500 Cobbs Creek Road.[8] *Id.* at 78. The suspect vehicle "took off at a high rate of speed" and then crashed after making a "right-hand turn off of 56th onto Hoffman." *Id.* Officer Marques

---

[7] We note that the complainant attended an "all-white" party, at which attendees dressed in all white. Thus, Appellant's attire, while somewhat unusual was not entirely distinctive, on that evening.

[8] The robbery occurred at 6333 Kingsessing Avenue. The Commonwealth did not present testimony regarding the distance between 6333 Kingsessing Avenue and 1500 Cobbs Creek Road. Additionally, the Commonwealth did not elicit testimony regarding the time between the flash report and the officers' observation of the suspect vehicle. However, the complainant testified that police officers knocked on his door to report a suspect was apprehended approximately fifteen or twenty minutes after he reported the incident.

testified that he saw two males flee from the vehicle, one was wearing all white and the other—whom the officer described as the passenger—was wearing a dark colored hoodie with blue jeans. *Id.* at 77. Officer Marques chased the passenger on foot but did not apprehend him. *Id.* at 79. Officer Kensey apprehended the male in all white, who was later identified as Appellant. *Id.* at 83. Officers later recovered the complainant's cellphone from the front passenger seat of the Nissan. *Id.* at 89.

Thus, we agree with the trial court that there was sufficiently reliable evidence that Appellant was the driver of the vehicle. Appellant was wearing clothes consistent with those described by the complainant and was captured after fleeing the suspect vehicle that contained the complainant's cellphone. Consequently, we discern no merit to Appellant's contention that the identification evidence in this case was insufficient. *See Smith*, 423 A.2d at 1299.

Judgment of sentence affirmed.

Judge Solano joins the Memorandum. Judge Panella Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2017

- 11 -